THE PEOPLE OF THE STATE OF NEW YORK ex rel. CLUETT, PEABODY & COMPANY and Others, Relators, v. THE STATE BOARD OF RAILROAD COMMISSIONERS OF THE STATE OF NEW YORK and GEORGE W. DUNN and Others, Members of Said Board, and THE TROY TERMINAL RAILROAD COMPANY, Respondents.

*Certificate of incorporation of a railroad company — what statement as to motive power is not a compliance with the statute — the granting of a certificate by the State Board of Railroad Commissioners to the Troy Terminal Railroad Company reversed.*

A certificate of incorporation filed by a railroad company, which provides: " That said railroad to be built or operated shall be a railroad for the conveyance of persons and property for compensation, to be operated by electricity, cable or

other approved lawful motive power," is not in itself a compliance with the statute.

The action of the State Board of Railroad Commissioners in granting to the Troy Terminal Railroad Company, over the objection of an overwhelming majority of the owners and occupants of the property along the line of its proposed railroad, a certificate under section 59 of the Railroad Law that public convenience and a necessity require the building of such proposed railroad, reversed.

CERTIORARI issued out of the Supreme Court and attested on the 12th day of September, 1903, directed to the State Board of Railroad Commissioners of the State of New York and George W. Dunn and others, constituting said board, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in granting to the Troy Terminal Railroad Company a certificate under section 59 of the Railroad Law.

The 3d paragraph of the certificate of incorporation of the Troy Terminal Railroad Company is as follows: " That said railroad to be built or operated shall be a railroad for the conveyance of persons and property for compensation, to be operated by electricity, cable or other approved lawful motive power."

*George B. Wellington, William J. Roche* and *Patrick C. Dugan,* for the relators.

*T. F. Hamilton,* for the Troy Terminal Railroad Company.

CHASE, J.:

The city of Troy is situated on the east side of the Hudson river. A short block east of the docks along the river front is Front street, and a short block east of Front street is River street, the principal business street of the city. It is proposed to build a railroad along Adams street, which is a street in the southern part of the city running east and west and crossing Front street, and then from Adams street on Front street northerly to the northerly end thereof, a distance of about 4,950 feet and extending therefrom further northerly in the line of said Front street, partly on private property and partly over lands under water, the title to which is in the State of New York but which lands under water adjoin individual or corporate riparian owners, to a point near the

**40** PEOPLE ex rel. CLUETT, PEABODY & CO. *v.* COMRS.

THIRD DEPARTMENT, MAY, 1904.          [Vol. 95.

State dam across the Hudson river, making a total length of about two miles. The tracks of the New York Central and Hudson River Railroad Company, the Delaware and Hudson Company and the Boston and Maine Railroad Company enter said city.

The Troy Union Railroad Company, a steam railroad corporation formed about 1851 (See Laws of 1851, chap. 255), maintains its railroad in certain streets of said city and connects with the tracks of said New York Central and Hudson River Railroad Company, the Delaware and Hudson Company and the Boston and Maine Railroad Company. Said Troy Union railroad is used in common by said other railroad companies and by it the several freight yards in said city and the Troy Union Depot are connected. The United Traction Company, a street surface railroad company, has a double line of tracks through the entire length of said River street and has a single or a double line of tracks on various other of the streets of said city and on its tracks run both passenger and freight cars.

The United Traction Company also has tracks connecting Troy with the cities of Watervliet, Albany, Rensselaer, Cohoes and numerous villages. The Hudson Valley Railway Company, a street surface railroad company, has tracks uniting many of the villages in the eastern and northern parts of the State, and runs its freight and passenger cars to the city of Troy and over many of the streets thereof.

On said Adams street there now exists a single line of tracks of the Boston and Maine Railroad Company and for a part of its length a double line of tracks of said United Traction Company. There is no room on said street for another line of tracks. The certificate of incorporation of the proposed railroad states that the same is to commence in the tracks of the Troy Union railroad in or near Adams street, which is a distance of about fourteen hundred feet from the corner of Front and Adams streets; but the map filed does not show any intention on the part of said proposed railroad to build another line of tracks on said Adams street, and its evident intention is to connect its tracks with the tracks of the Boston and Maine Railroad Company or the tracks of the United Traction Company, or with both. Front street is a narrow street used extensively and almost entirely for trucking and heavy teaming. It is from sixteen to forty feet in width. For at least a portion of the way it would be

PEOPLE ex rel. CLUETT, PEABODY & CO. v. COMRS. 41

App. Div.]            THIRD DEPARTMENT, MAY, 1904.

impossible to maintain more than one line of railroad tracks thereon. The land on which the city is built ascends from the river easterly and the ground floor of the buildings on the west side of River street is usually one story above the ground floor of the same buildings on the east side of Front street. The land between River street and Front street is covered with stores compactly built and they are substantially all occupied by wholesale merchants, and such merchants include the principal wholesale merchants of the city of Troy. Most of the stores on the west side of River street extend from River street back to the east side of Front street, and some of them are carried over Front street by bridges that are from sixteen to twenty feet above the present surface of said Front street, and they are thus continued from the west side of River street to the dock on the Hudson river.

From the Delaware and Hudson Company's bridge at the northerly end of Front street north to the State dam the lands are principally owned by persons and corporations engaged in the manufacture of shirts, collars and cuffs, and on said lands are situated and conducted the principal shirt, collar and cuff manufactories of the city and some of the largest mills for such manufacture in the world. One company with its mills there situated employs within its factory 4,000 persons and outside of its factory and connected therewith 1,000 persons.

South of Adams street there are several of the largest and most important manufactories of the city of Troy, but they are on the line of the tracks of the New York Central and Hudson River Railroad Company, and also along the banks of the Hudson river, and they would not be in any way benefited or convenienced by the proposed railroad. Substantially all of the other manufacturers and wholesalers of the city of Troy are on the line of one of the other mentioned railroads. The line of the proposed railroad along Front street does not at any point reach the Hudson river.

Freight on cars along Front street could not be transferred directly into boats on the Hudson river. The record does not disclose any satisfactory evidence that the proposed road would be a convenience or that it is a necessity for the public in transferring freight to or from boats on the Hudson river during the period of navigation. Such freight can now be transferred from cars to boats

at the foot of Adams street. The handling and trucking required in connection with the transfer of freight by cars from points within the city to and from the docks along Front street above Adams street would seem to negative any claimed value of the proposed road for such transfer of freight only. Except for the possible transfer of freight to and from boats, the only persons constituting the public to be convenienced by or for whom the proposed road is a necessity are the persons and corporations owning and occupying the property on the line of the proposed road. This court in considering the weight of evidence must do so with reference to the evidence bearing upon the convenience and necessity of such owners and occupants. The business of the wholesalers and manufacturers along the line of said proposed railroad is not generally conducted in carload lots. The receipt and transmission of freight is principally in parcel lots or partial carload lots.

If the proposed road should be built, the distance by rail from the stores and factories along its route to most of the freight depots of the city would be considerably greater than it is by the route used by teamsters and truckers, and the evidence is uncontradicted that a large part of the freight sent to and from the factories along the line of the proposed road can be more quickly delivered by teams than it could be by rail if the proposed road should be built.

Along the 4,950 feet of the proposed road on Front street there is on both sides 9,900 feet of adjoining property, including therein the cross streets. Such adjoining property is assessed in the aggregate about $2,255,000. Of this amount the owners and occupants appearing in opposition to said road represent about 6,536 feet, which is assessed at $1,623,765; from the remaining 3,264 feet there must be taken the width of eleven cross streets measured on both sides of Front street, amounting to about 1,200 feet, and but a part of the owners and occupants of the remaining 2,164 feet is affirmatively shown to be in favor of the proposed road.

The distance from the Delaware and Hudson Company bridge to the State dam is 3,981 feet, and the property along the line thereof has a total assessed valuation of about $1,352,600; the persons opposing this application represent a frontage of 2,337 feet, with an assessed valuation of $1,021,500, and the persons and corporations

north of the Delaware and Hudson Company bridge affirmatively shown to be in favor of the proposed road represent but a small part of such frontage or assessed valuation.

The constituent companies of the Troy Hydraulic Company and two other corporations are the only corporations or persons on the line of the proposed road doing an extensive business that favor the same.

The last-mentioned corporations could practically and conveniently be accommodated by a spur road less than 1,000 feet in length from the freight yard of the Boston and Maine Railroad Company. Concededly the proposed road is to be principally a freight road, and almost wholly for the convenience of the owners and occupants of the property on the line thereof. A large majority of such owners and occupants vigorously and persistently protest against the building of such road, and they not only say that such road is not a necessity, and will not be a convenience, but they insist that if it is built it will seriously interfere with public interests.

The evidence contained in the record from such owners and occupants on the subject of public convenience and necessity is so overwhelmingly against the determination of the Railroad Commissioners that such determination must be held to be against the clear weight of evidence.

The statements in this opinion in regard to the evidence have been made on the assumption that the road has been properly organized as a street surface railroad, and the same would, if built, be run with electric power. If the proposed road is to be run by steam power the evidence is practically unanimous against the same being either a convenience or a necessity.

The 3d paragraph of the certificate of incorporation is not in itself a compliance with the statute (See Laws of 1890, chap. 565, § 2, as amd. by Laws of 1892, chap. 676.) This court does not pass upon the question as to whether the certificate as a whole shows that the proposed railroad is to be a street surface railroad, nor does the court pass upon the other serious questions presented by the relator.

The certificate under section 59 of the Railroad Law (Laws of 1890, chap. 565, added by Laws of 1892, chap. 676, and amd. by Laws of 1895, chap. 545) should not be granted upon the facts

44  PEOPLE ex rel. ROCHESTER TEL. CO. *v.* PRIEST.

THIRD DEPARTMENT, MAY, 1904.                    [Vol. 95.

shown in the record so long as there is an overwhelming majority of the public as represented by the owners and occupants of the property along the line of the proposed road against the building thereof.

The determination of the Railroad Commissioners should be reversed, with fifty dollars costs and disbursements to the relators.

All concurred; HOUGHTON, J., in memorandum.

HOUGHTON, J. (concurring):

I concur in the result because the proposed road is not restricted to the use of electricity as motive power. If it were I should not favor overruling the determination of the Railroad Commissioners.

Determination of the Railroad Commissioners reversed, with fifty dollars costs and disbursements to the relators.